1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7
8
9
10
11
12
13
14
15
16

IN RE:

WESTERN ASBESTOS SETTLEMENT
TRUST

MARVIE DARDEN et al.,

          Appellants,

      v.

WESTERN ASBESTOS SETTLEMENT
TRUST et al.,

          Appellees.

Case No.  5:21-cv-06558-EJD

**ORDER AFFIRMING UNITED
STATES BANKRUPTCY COURT'S
ORDERS; GRANTING APPELLEES'
MOTION TO STRIKE**

Re: Dkt. Nos. 13, 14, 16

17
18
19
20
21
22

     In August 2021, the Bankruptcy Court issued a partial final (1) decision denying Appellants Marvie Darden, Christopher Darden, Debora Darden, Lawrence Darden, Rosalind Darden Keeton, Anita Gardyne, and Angela Newsome ("Appellants") motion for summary judgment on their declaratory relief/personal injury trust claim and (2) granting Appellees Western Asbestos Settlement Trust, Sandra Hernandez, and John Luikart motion for summary judgment regarding Appellants' personal injury claim.

23
24
25
26

     In September 2021, the Bankruptcy Court issued a second decision granting Appellants' motion for summary judgment regarding scope of release and granting Appellees' motion for summary judgement regarding Appellants' wrongful death claims.  Thereafter, the Bankruptcy Court issued a Judgment regarding Appellants' personal injury and wrongful death claims.

27
28

Appellants timely appealed the Bankruptcy Court's Judgment and decisions.  Having considered the Parties' briefing, and for the below reasons, the Court **AFFIRMS** the Bankruptcy Court's grants of summary judgment.

## I.       BACKGROUND

### A.  Factual Background

Western Asbestos Settlement Trust ("the Trust") is a trust organized under 11 U.S.C. § 524(g) to satisfy all asbestos-related personal injury claims caused by exposure to asbestos-containing products for which Western Asbestos Company, Western MacArthur Company, and/or MacArthur Company have legal responsibility.

Decedent Edward Darden was a welder who worked at several Bay Area shipyards throughout the 1960s and 1970s.  Mr. Darden worked with asbestos-containing materials, like pipe covering, block insulation, asbestos cloth, and asbestos cement.  Mr. Darden's Social Security Records and deposition testimony establish that before May 1967, and after 1967, Mr. Darden was exposed to asbestos from Western Asbestos Company and Western MacArthur Company's asbestos-containing insulation products.

From 1930 through May 1967, Western Asbestos distributed and installed Johns-Manville brand asbestos-containing insulation products.  *See Kaminski v. W. MacArthur Co.*, 175 Cal. App. 3d 445, 451–53 (1985) (discussing Western Asbestos' corporate history); *see also* SER 0005 (incorporating the *Kaminski* court's discussion).  In May 1967, MacArthur Company formed Western MacArthur Company to take over the business of Western Asbestos.  The deal was structured as an asset-purchase agreement.  Western Asbestos immediately ceased operations and dissolved in 1969.  Western MacArthur Company continued to operate western Asbestos' business without change from May 1967 through the mid-1970s.

On March 15, 1983, Mr. Darden's former counsel, Ken Carlson filed a personal injury lawsuit for non-malignant asbestosis in the Superior Court of Alameda County, California. Western MacArthur was named as a defendant in Mr. Darden's 1983 complaint.  Western

1   Asbestos was not named as a defendant.

2       In 1986, Mr. Darden settled his asbestosis case against Western MacArthur and in

3   exchange for $1,300, Mr. Darden signed a release of liability in favor of Western MacArthur

4   Company and its predecessors-in-interest.  This release stated:

> 5    I [Edward Darden], being of lawful age, do hereby release, acquit and
>      forever discharge WESTERN MacARTHUR COMPANY, and any
> 6    predecessors and/or alternative entities and/or successors and all other
>      persons, individuals, firms, entities, companies and corporations
> 7    controlled by or in conjunction with said parties, of and from any and
>      all actions, causes of action, claims, demands, damage costs, loss of
> 8    services, expenses and compensation, on account of, or in any way
>      growing out of, any and all known and unknown, existent or non-
> 9    existent, personal injuries and property damages, for or because of
>      any matter or thing done, omitted or suffered to be done by the parties
> 10   being released from the beginning of time to and including the date
>      hereof arising out of or in any way connected with the occurrence of
> 11   any or all exposure at any time to asbestos and/or products containing
>      asbestos by plaintiff.
> 12
>      THIS RELEASE is being particularly made in the following
> 13   described accident, casualty and/or event, hereinafter referred to as
>      accident: This settlement relates to (plaintiff's) injuries resulting from
> 14   an alleged exposure to asbestos and/or asbestos-containing products.
>      The release further relates to all injuries now known and those which
> 15   may arise in the future. The release further relates to all causes of
>      action including those for personal injury, loss of consortium and
> 16   wrongful death.
>
> 17    . . . .
>
> 18   That as part of the consideration for the payment of the settlement
>      consideration, the undersigned agrees to dismiss said action with
> 19   prejudice as to this settling Defendant only.
>
> 20    . . . .
>
> 21   THE UNDERSIGNED DECLARES AND REPRESENTS that the
>      injuries and damages sustained by the undersigned are permanent and
> 22   progressive and that recovery therefrom is uncertain and in executing
>      this release the undersigned relies wholly upon his own judgment
> 23   belief and knowledge of the nature extent and duration of said injuries
>      and damages and that he has not been influenced to any extent
> 24   whatever in making this release by any representations or statements
>      regarding said injuries or regarding any other matters made by the
> 25   persons firms or corporations who are hereby released or by any
>      person or persons representing them or by any physician or surgeon
> 26   employed by them

27

Case No.: 5:21-cv-06558-EJD
28   ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT'S ORDERS; GRANTING
     APPELLEES' MOTION TO STRIKE

United States District Court
Northern District of California

1    SER 1517–18.

2         The dismissal, entered by the Superior Court following the Release, stated that Mr. Darden

3    dismisses with prejudice:

4         AS TO DEFENDANT WESTERN MacARTHUR COMPANY AND
          ANY PREDECESSORS AND/OR ALTERNATIVE ENTITIES
5         AND/OR SUCCESSORS ONLY.

6    SER 1521.

7         In 2002, Western MacArthur and Western Asbestos filed Chapter 11 bankruptcies and

8    proposed a joint Chapter 11 plan of reorganization (the "Joint Plan") to address their pending and

9    future asbestos exposure liabilities.  Importantly, the Western Companies' Bankruptcy was

10   forward-looking, with the primary goal of establishing, through a plan of reorganization, a Trust

11   which would make a "fair allocation of Trust funds as among claimants suffering from different

12   disease processes" with allowed asbestos-related claims.  By reorganizing under § 524(g), the

13   companies could provide remedies for both existing and future claims (namely because asbestos

14   disease presents years after exposure).  The Joint Plan created the Trust and the accompanying

15   Asbestos Personal Injury Settlement Trust Distribution Procedures (the "TDP") and Case

16   Valuation Matrix (the "Matrix") (collectively the "Trust Documents").  The Trust Documents

17   created procedures for (1) asbestos claimants to submit claims to the Trust, (2) the Trust to

18   evaluate and value those claims based on set criteria, and 3) the Trust to pay a certain percentage

19   of the assigned value.  The Joint Plan and Trust Documents also authorized the Trust to investigate

20   the merits of the filed claims, and they transferred to the Trust the Chapter 11 debtors' defenses to

21   any asbestos claim.  The Bankruptcy Court confirmed the Joint Plan in January 2004.

22        On December 16, 2016, Mr. Darden was diagnosed with asbestos-related mesothelioma.

23   In 2017, Mr. Darden filed a personal injury claim with the Trust, seeking to recover damages for

24   "personal injuries and loss of consortium" due to this diagnosis.  The Trust's claim form requires

25   claimants to disclose whether they had ever filed any "asbestos-related lawsuits."  Mr. Darden did

26   not disclose the 1993 Alameda County Action or the Release.  Mr. Darden passed away on

27   Case No.: 5:21-cv-06558-EJD
28   ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT'S ORDERS; GRANTING
     APPELLEES' MOTION TO STRIKE

United States District Court
Northern District of California

1    September 5, 2017, and his widow, Marvie Darden, pursued the June 2017 claim as his successor

2    in interest.

3        The Trust spent several months analyzing the June 2017 Claim and initially offered to

4    settle it in February 2018 based on an Individual Review process.  Mr. Darden's counsel rejected

5    this offer.  While there is some confusion regarding how the Trust learned of the earlier 1983

6    Action, the Trust asked Mr. Darden's counsel about the litigation and requested the Release.  The

7    Trust ultimately located the Release in or around July 2019.  The Trust thereafter rejected the June

8    2017 Claim, finding that the Release resolved all of Mr. Darden's asbestos related claims—

9    namely, personal injury, loss of consortium, and wrongful death—against Western Asbestos and

10   Western MacArthur.

11       In December 2019, Mr. Darden's counsel communicated with the Trust that Mr. Darden's

12   heirs have a valid wrongful death claim that neither Mr. Darden nor his estate could release.  Two

13   months later, in February 2020, the Trust officially rejected Mr. Darden's asbestos-related claims.

14   This action ensued.

15       On July 23, 2020, the Trust filed its Answer and Counterclaims.  The Trust's Answer

16   denied the Dardens' claims and contended that: (1) the 1986 Release and the Dismissal with

17   Prejudice of the 1983 complaint dismissed the Trust and its predecessor; (2) Mr. Darden released

18   his and the heirs' future wrongful death claims; (3) Mr. Darden personally and on behalf of the

19   heirs agreed to indemnify and hold the Trust and its predecessor harmless from any loss, including

20   the wrongful death claims; and (4) the Dardens' wrongful death claims against the Trust are

21   preempted by the requirements of 11 U.S.C. § 524(g), the terms of the Plan, the TPP, and the

22   Matrix.

23       The Trust asserted five affirmative defenses and requested equitable estoppel regarding the

24   statute of limitations.  The Trust alleged that the Dardens' personal injury and survivor claims

25   against it are barred by *res judicata*.  The Dardens served their answer and reply to the Trust's

26   counterclaims.  The Dardens denied the Trust's allegations.  The Dardens also asserted several

27

28

United States District Court
Northern District of California

1    affirmative defenses, including that the Trust's counterclaims and each purported cause of action

2    (including requests for damages) are barred by the applicable statute of limitations.  The Dardens

3    also asserted the defense of laches and waiver.

4         On March 9, 2021, Appellants filed their motion for summary judgment with the

5    Bankruptcy Court.  Appellants' main points for summary judgment were: (1) The 1986 release by

6    its terms did not encompass Western Asbestos' pre-May 1967 negligence liability; (2) The 1985

7    *Kaminski* Opinion held that such liability never transferred to Western MacArthur, the entity to

8    whom the release was granted; (3) The product-line successor theory does not apply to "ordinary

9    negligence" liability; (4) Mr. Darden lacked the legal authority to release his future heirs' claims;

10   and (5) The Trust's counterclaims were untimely.

11        On March 9, 2021, the Trust also submitted a motion for summary judgment.  The Trust

12   argued that the Dardens' claims based on negligence are barred by *res judicata* and claim

13   preclusion.  The Trust also argued that the Dardens' claims for wrongful death are barred by *res

14   judicata* and implied preemption by the Bankruptcy Code, the Confirmation Order, and the Trust's

15   governing documents.  The Trust further argued that the Dardens' claims are barred (1) by the

16   1986 dismissal and release and (2) based on *res judicata* and conflict preemption pursuant to the

17   Plan documents.

18        On June 21, 2021, the Bankruptcy Court heard argument on the Parties' cross-motions for

19   summary judgment.  The Bankruptcy Court determined that Appellants had two issues—a

20   personal injury claim and a wrongful death claim.  Given the distinct nature of the claims, the

21   Court wrote separate orders as to each claim.  On August 5, 2021, and September 13, 2021, the

22   Bankruptcy Court issued two separate final decisions.  The August 2021 decision addressed the

23   June 2017 personal injury claim.  The September 2021 decision addressed the wrongful death

24   claims.  Both decisions were in favor of Appellees, and on September 13, 2021, the Bankruptcy

25   Court issued a Judgment stating:

26              For the reasons stated in this court's August 5, 2021 memorandum
                decision and September 13, 2021 memorandum decision, judgment is

27   Case No.: 5:21-cv-06558-EJD

28   ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT'S ORDERS; GRANTING
     APPELLEES' MOTION TO STRIKE

entered as follows:

> (1) Summary Judgment is granted, in part, to the Dardens, and this court declares that the Release (as defined in the memorandum decisions), in and of itself, does not bar their wrongful death claims.

> (2) Summary Judgment is granted, in part, to the Trust, and this court declares that the Release does bar the June 2017 Claim (as defined in the memorandum decisions).

> (3) Summary Judgment is granted, in part, to the Trust, and this court declares that the Trust is not authorized to, and therefore need not consider nor compensate the Dardens for their wrongful death claims.

> (4) The Trust's remaining declaratory relief claims for relief are dismissed without prejudice.

ER 43.

On January 14, 2022, Appellants filed their opening brief. Appellants' Opening Brief ("Appellants' Br."), Dkt. No. 13. Appellants present five issues on appeal:

1.  Whether the Bankruptcy Court erred in its August 2021 Order by granting summary judgment for Appellees as to Mr. Darden's pre-1967 negligence claim (the personal injury claim).

2.  Whether the Bankruptcy Court erred in its September 2021 Order by granting Appellees' motion for summary judgment and holding that the Joint Plan and Trust Documents do not authorize the Trust to compensate Appellants on their wrongful death claims.

3.  Whether the Bankruptcy Court erred in failing to follow and apply *Kaminski v. Western MacArthur Co.* by holding that Western Asbestos was a predecessor to Western MacArthur for strict products liability only.

4.  Whether Appellants consented to the Bankruptcy Court entering final judgment on their claims.

5.  Whether, in light of *Stern v. Marshall*, 564 U.S. 462 (2011), the Bankruptcy Court had constitutional authority to enter a final judgment on state law personal injury and wrongful death claims.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## II.   LEGAL STANDARD

"[A] bankruptcy court's grant of summary judgment [is reviewed] de novo." *In re Christoff*, 527 B.R. 624, 628 (9th Cir. BAP 2015).

A court must grant summary judgment if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to satisfy this burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Id.* If the moving party meets its burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, Rule 56(c) mandates the moving party win the motion for summary judgment. *See id.*

## III.   DISCUSSION

At the outset, the Court recognizes that this is a complicated case, involving serious questions of contract and tort law. However, at bottom, the 1986 Release, signed by Mr. Darden upon advice of counsel, is broad and comprehensive. Its terms bar all present and future asbestos-related causes of action for personal injury claims by Mr. Darden against Western MacArthur, and its successor-in-interest Western Asbestos. Mr. Darden's 2017 Trust Claim is a second asbestos related lawsuit. Unfortunately, because Mr. Darden released and dismissed, with prejudice, his claims in his first lawsuit, he is precluded from splitting his single cause of action—his primary right not to be exposed to dangerous asbestos products—into a new personal injury claim based on negligence. Splintering the causes of action in this manner violates both the Release and fundamental *res judicata* principles. Regrettably, because Mr. Darden's negligence claim cannot

1    proceed against this Trust, Appellants' wrongful death claims cannot proceed.

2         The Court also notes at the outset the impact that Appellants' claim could have on the

3    Trust.  The Plan Documents protect future claimants' interests by requiring the Trust to regularly

4    review the claims payment percentage and make forecasts of future claims.  Earlier settled and/or

5    released claims are built-in projections.  As noted in Appellees' brief, "The Trust has identified

6    approximately 5,600 pre-petition settled and paid claims such as Mr. Darden's and of those,

7    approximately 3,700 claimants were alive at the inception of the Trust."  Appellees' Opening Brief

8    ("Appellees' Br."), Dkt. No. 14.  If Appellants were allowed to pursue their claims, despite Mr.

9    Darden's waiver, certain claimants would be permitted double recovery and would diminish the

10   fund for future claimants that have not received *any* type of asbestos-related compensation.  It is

11   for this reason that the Trust has historically denied claims like Appellants.

12                                   **A.  Jurisdiction**

13        On June 18, 2021, the Bankruptcy Court conducted hearings on the Parties' respective

14   cross motions for summary judgment.  The court resolved whether the Trust must consider and

15   compensate Appellants for Mr. Darden's asbestos-related claims.  As noted, the Trust was created

16   under Bankruptcy Code § 524(g) to resolve tort claims arising from exposure to the asbestos-

17   containing products distributed by Chapter 11 debtors Western Asbestos Company, Western

18   MacArthur Company, and MacArthur Company.  After hearing argument, the Bankruptcy Court

19   determined that Mr. Darden's personal injury claim was precluded by his 1986 Release and that,

20   while Mr. Darden could not release his heirs' wrongful death claims, without the underlying

21   personal injury asbestos-related claim, the Trust could not compensate the heirs for their wrongful

22   death claims.  The Bankruptcy Court thus entered summary judgment in Appellees' favor as to the

23   two claims.  Appellants now argue that pursuant to 28 U.S.C. § 157(b)(5), the Bankruptcy Court

24   lacked constitutional authority to enter a final judgment because Appellants did not consent to the

25   Bankruptcy Court's jurisdiction.  Appellants contend that the bankruptcy judge should have

26   submitted proposed findings of fact and conclusions of law, and that *this* Court should have

27

28

1    considered those proposed findings and conclusions after reviewing *de novo* any objections to the

2    proposals.

3         As an initial matter, the Court reviews the Bankruptcy Court's grant of summary judgment

4    *de novo*.  Thus, regardless of whether the Bankruptcy Court exceeded its grant of jurisdiction, its

5    findings and holdings will be reviewed *de novo*.  Nonetheless, the Court finds that the Bankruptcy

6    Court did not exceed its jurisdiction and properly entered judgment.

7         Appellants rely on *Stern v. Marshall*, 564 U.S. 462 (2011) for support that the Bankruptcy

8    Court improperly entered judgment.  There, the Supreme Court held

9              Article III of the Constitution provides that the judicial power of the
               United States may be vested only in courts whose judges enjoy the
10             protections set forth in that Article.  We conclude today that Congress,
               in one isolated respect, exceeded that limitation in the Bankruptcy Act
11             of 1984.  The Bankruptcy Court below lacked the constitutional
               authority to enter a final judgment on a state law counterclaim that is
12             not resolved in the process of ruling on a creditor's proof of claim.

13   *Id.* at 503.  Simply put, a bankruptcy court may only resolve bankruptcy claims or claims that are

14   necessarily resolved in the claims allowance process.  To resolve issues outside these categories, a

15   bankruptcy court needs consent.

16        Appellants did not consent to the Bankruptcy Court's entry of a final order or judgment.

17   At a scheduling conference in November 2020, Appellants stated that they did not consent to the

18   entry of a final order or judgment by the Bankruptcy Court pursuant to Bankruptcy Local Rule

19   7008-1.  The question thus becomes whether Appellants' personal injury and wrongful death

20   claims were "core claims."  This Court finds that they are "core claims."

21        Appellants filed their complaint in May 2020, in the United States Bankruptcy Court in

22   Oakland.  SER0046.  The complaint alleged that the Bankruptcy Court had "jurisdiction over th[e]

23   proceeding under 28 U.S.C. § 157(a); 28 U.S.C. § 1334; and the January 27, 2004 Order

24   Confirming Second Amended Joint Plan of Reorganization and Granting Related Relief entered

25   by the United States Bankruptcy Court for the Northern District of California."  SER0047

26   (Complaint ¶ 1).  As relevant, the Complaint made the following allegations:

27   Case No.: 5:21-cv-06558-EJD
28   ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT'S ORDERS; GRANTING
     APPELLEES' MOTION TO STRIKE

10

United States District Court
Northern District of California

4. Defendant Western Asbestos Settlement Trust (Defendant) is a trust organized under 11 U.S.C. § 524(g) to satisfy all asbestos-related personal injury and wrongful death claims caused by conduct of, and/or exposure to asbestos-containing products for which Western Asbestos Company; Western MacArthur Company; and/or MacArthur Company have legal responsibility.

5. Decedent Eddie Darden (Eddie) developed asbestos-related malignant mesothelioma in 2016; and he died from the cancer in 2017. His surviving spouse is Plaintiff Marvie Darden (Marvie). Marvie is the successor-in-interest to Eddie's survivorship personal injury claim pursuant to Cal. Code Civ. Proc. § 377.11, *et seq.* Additionally, as Eddie's surviving spouse, Marvie has her own wrongful death claim pursuant to Cal. Code Civ. Proc. § 377.60, *et seq.* The remaining Plaintiffs are all of Eddie's surviving children, and they likewise have their own wrongful death claims pursuant to Cal. Code Civ. Proc. § 377.60, *et seq.*

6. As a result of Eddie's asbestos-related malignant mesothelioma and resulting death, Eddie and Plaintiffs filed Asbestos Personal Injury and Wrongful Death Claims with Defendant pursuant to the Western Asbestos Settlement Trust Distribution Procedures. However, Defendant rejected Plaintiffs' claims on the basis of a "threshold legal issue" that must be resolved by this Court rather than by an arbitrator. Defendant asserted, as an affirmative defense, that Eddie's and Plaintiffs' claims are barred because in 1986 Eddie signed a release of liability in the context of Eddie's personal injury lawsuit for non-malignant asbestosis.

7. As explained herein, Eddie's and Plaintiffs' claims are not barred by the 1986 release. Plaintiffs therefore seek a declaratory judgment providing that Defendant must evaluate and pay decedent Eddie Darden's and Plaintiffs' Asbestos Personal Injury and Wrongful Death Claims irrespective of the 1986 release.

These allegations are the same issues before this Court, and Appellants admit in their Complaint that the Bankruptcy Court had jurisdiction to resolve these issues.

The Bankruptcy Court has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The Bankruptcy Court retains jurisdiction to resolve matters where there is "a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005) (citations omitted). In *In re Pegasus*, the Ninth Circuit cited, with approval, the Third Circuit's reasoning in *In re Resorts International, Inc.*, 372 F.3d 154, 166–67 (3d Cir. 2004) that "in cases involving continuing trusts (such as litigation trusts, or, as here, a

1  liquidating trust), trusts by their nature maintain a connection to the bankruptcy even after the plan

2  has been confirmed." *Id.* at 1194 (quotation marks omitted).  Further, matters affecting "the

3  interpretation, implementation, consummation, execution, or administration of the confirmed plan

4  will typically have the requisite close nexus." *Id.* (quoting *In re Resorts Int'l*, 372 F.3d at 167).

5  There can be no doubt that the allegations are intimately related with the underlying

6  Chapter 11 case.  While the claims asserted in the complaint are common law tort and contract

7  claims, their resolution turns on the execution of the Trust and could affect the implementation and

8  execution of the Plan itself.  As the Bankruptcy Court noted, "[w]hile this adversary proceeding

9  only addresses a few potential claims against the Trust, . . . an adverse ruling could result in a

10  flood of new claims against it that may possibly jeopardize [the Trust's] ability, after 17 years, to

11  meet its § 524(g) obligations."  ER 12.  Further, Appellants' wrongful death declaratory claims

12  required the Bankruptcy Court to interpret the Trust and the Trust Documents.  Thus, there was a

13  sufficiently close nexus between this proceeding and the Joint Plan to confer jurisdiction onto the

14  Bankruptcy Court.  Accordingly, the Bankruptcy Court had jurisdiction to enter judgment.

### B.  Appellants' Personal Injury Claim

#### 1.  Scope of the 1986 Release

17  Appellants sought summary judgment that Mr. Darden did not release his negligence claim

18  against Western Asbestos.  The Bankruptcy Court found otherwise and granted summary

19  judgment in the Trust's favor under Federal Rule of Bankruptcy Procedure 7056(f), reasoning that

20  "[t]he undisputed facts demonstrate that an objectively reasonable person in [Mr. Darden's] shoes

21  would have understood that Western MacArthur intended the Release to include Western

22  Asbestos."  ER 15.  The court explained that:

> The *Kaminski*'s court's careful analysis – issued before the parties executed the Release- established as a matter of law that Western Asbestos was Western MacArthur's one and only predecessor. Given the *Kaminski* court's findings and holding, the fact that the Release sought a broad release of liability from Darden's asbestos exposure, and that the dismissal order included Western MacArthur's predecessor entity, a reasonable person in Darden's position would believe that Western MacArthur sought a release of Western

Case No.: 5:21-cv-06558-EJD
ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT'S ORDERS; GRANTING
APPELLEES' MOTION TO STRIKE

12

Asbestos.

ER 15.  The court held that "Western Asbestos was an intended beneficiary of the Release, and that [Mr. Darden] released all of his asbestos related claims against it."  *Id.*

The 1986 Release is a contract.  *Hass v. RhodyCo Productions*, 26 Cal. App. 5th 11, 23 (2018).  Federal courts look to state law for purposes of "construction and enforcement" of settlement agreements.  *O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004).  Ordinarily, federal courts "accept the decision of an intermediate appellate court as the controlling interpretation of state law."  *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1124 (9th Cir. 2021).

Appellants argue that the Bankruptcy Court misconstrued the 1986 Release and that the Release is "much more circumspect."  Appellants' Opening Br. at 45.  Appellants argue that the Release is narrow and is specifically limited to "this settling defendant only [Western MacArthur]."  *Id.*  The Court disagrees.  By its terms, the 1986 Release and the Dismissal include both the settling defendant, Western MacArthur, and "any predecessors and/or alternative entities and/or successors."  Thus, by its terms, even "narrowly construed," the Release is much broader than the settling defendant.

A third party does not need to be named in a release to be included in the release.  "[T]o obtain summary judgment on the ground that a general release has discharged him from liability, a third party to the release agreement must affirmatively show that the parties intended to release him."  *Rodriguez v. Oto*, 212 Cal. App. 4th 1020, 1029 (2013).  California courts have established standards, procedures, and relevant evidence for interpreting whether a settlement agreement is enforceable by a third party and inferences that may be drawn from that evidence on summary judgment."  *See Neverkovec v. Fredericks*, 74 Cal. App. 4th 337, 347–52 (1999); *Monster Energy Co. v. Schecter*, 7 Cal. 5th 781, 788 (2019) (applying the objective standard of what a reasonable person would believe in interpreting a contract under California a law).

For example, in *Neverkovec*, which the Bankruptcy Court relied on, the court held that under California law, a third party seeking a discharge from liability under a release between other

United States District Court
Northern District of California

1   parties must "affirmatively show that the parties intended to release him."  74 Cal. App. 4th at

2   349.  The California Supreme Court has held that "[i]n determining the meaning of a written

3   contract allegedly made, in part, for the benefit of a third party, evidence of the surrounding

4   circumstances and negotiations in making the contract is both relevant and admissible."  *Id.*

5   (collecting cases); *see also* Cal. Civ. Code § 1856(g) (extrinsic evidence allowed to interpret terms

6   of an agreement).[1]  The court held that in deciding whether a third-party was an intended

7   beneficiary, "[t]he trier of fact must decide how a reasonable person in the releasing party's shoes

8   would have believed the other party understood the scope of the release."  *Id.* at 351.  "Thus,

9   testimony by the releasing party regarding who *he* thought he was releasing, while it may serve to

10  explain the situation, does not determine the legal effect of the release."  *Id.*  However, how a

11  "reasonable person would view the other party's understanding of the release is generally a matter

12  of inference based on the extrinsic evidence."  *Id.*

13        Appellants did not submit declarations from the contracting parties, but did not appear "at

14  odds" with the "facts and circumstances surrounding the 1983 Alameda County Action, the

15  Release (at least as to [Mr. Darden's personal causes of action) and Western MacArthur's

16  corporate history."  ER 14–15.  Appellees submitted uncontroverted extrinsic evidence explaining

17  the circumstances surrounding the 1986 Release:

18        1.  James Penrod, percipient and expert witness for Appellees, testified in his declaration that:

19             (a) Western Asbestos was the exclusive distributor and installer of Johns-Manville asbestos

20             containing products and commanded 50% of the asbestos product market in Northern

21             California;85 (b) Western Asbestos often was the sole supplier and installer of asbestos

22             containing products; (c) there is no practical difference between the scope of Western

23             Asbestos' strict product liability and negligence for asbestos related injuries; and (d) the

24

25  ―――――――――――――――

26  [1] Appellants argue that the parol evidence rule precludes Appellees' use of extrinsic evidence to
    interpret the 1986 Release.  *But see Garcia v. Truck Ins. Exchange*, 36 Cal. 3d 426, 440 (1984)
27  (holding that "evidence of the circumstances and negotiations of the parties in making the contract
    is both relevant and admissible").

Case No.: 5:21-cv-06558-EJD

28  ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT'S ORDERS; GRANTING
    APPELLEES' MOTION TO STRIKE

1
2
3

standard practice of the defendants and their insurers were to obtain as broad and complete releases as possible because they did not want to settle a case and then be sued later on the same facts of asbestos exposure;[2]

4
5

2.  The history of the relationship between Western Asbestos and Western MacArthur recited in the *Kaminski* decision;

6
7
8

3.  Testimony of the lawyers involved in the *Kaminski* case that the effect of the *Kaminski* decision was that Western MacArthur was liable for Western Asbestos' asbestos liability exposure;

9

4.  The Plan Proponents confirming this same history in the Disclosure Statement; and

10
11

5.  The broad language of the 1986 Release, coupled with the settlement goals of asbestos defendants like Western MacArthur.

12
13
14

Taken together, this evidence demonstrates that a reasonable person in Mr. Darden's shoes would have understood that Western MacArthur wanted the broadest release possible for itself and Western Asbestos, its predecessor.

15
16
17
18
19
20
21
22
23
24

Appellants next argue that "predecessor in interest to Western MacArthur" has a particular meaning under California law," and that Western MacArthur was the successor-in-interest to Western Asbestos only for purposes of strict products liability, under the product-line successor theory.  Appellants' Opening Br. at 40–41 (citing *Kaminski*, 175 Cal. App. 3d at 456–59).  This misunderstands the analysis.  The *Kaminski* court held that Western Asbestos was Western MacArthur's one and only predecessor.  This, coupled with the fact that the release sought a broad release of liability, and that the dismissal order included Western MacArthur's predecessor entity, would lead a reasonable person in Mr. Darden's position to believe that Western MacArthur sought a release of Western Asbestos.  Thus, as a matter of contract interpretation, the 1986 Release meant to release Western MacArthur's predecessor entity, Western Asbestos.

25

---

26
27

[2] The Bankruptcy Court overruled objections to the Penrod Declaration.  This Court reviews evidentiary rulings for abuse of discretion.  The Bankruptcy Courts evidentiary ruling on the admissibility of Mr. Penrod's declaration was logical, plausible, and fully supported by the record.

28

1    Accordingly, the Trust may enforce the Release.

2                **2.   Claim Preclusion[3]**

3          Appellees' sought summary judgment before the Bankruptcy Court, arguing that the June

4    2017 Claim was barred by claim preclusion.  Under California law, a claimant cannot bring two

5    lawsuits to remedy one primary right.  There are three elements to the claim preclusion doctrine:

6    (1) the decision in the prior proceeding is final and on the merits; (2) the present action is on the

7    same "cause of action" as the prior proceeding; and (3) the parties in the present action or parties

8    in privity with them were parties to the prior proceeding.  *Zevnik v. Superior Court*, 159 Cal. App.

9    4th 76 (2008).  The Trust satisfies the first element—the Alameda County Complaint's dismissal

10   with prejudice constituted a final judgment on the merits.  *Alpha Mech., Heating & Air*

11   *Conditioning, Inc. v. Travelers Cas. & Surety Co. of Am.*, 133 Cal. App. 4th 1319, 1328–29

12   (2005).

13         Claim preclusion does not attempt to compare the legal theories or labels used in the prior

14   and present litigation but instead focuses "on the primary right sought to be protected in the two

15   actions." *Johnson v. GlaxoSmithKline, Inc.*, 166 Cal. App. 4th 1497, 1517 n.17 (2008).  The

16   California Supreme Court held in *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 797 (2010):

17               To determine whether two proceedings involve identical causes of
18               action for purposes of claim preclusion, California courts have
                 "consistently applied the 'primary rights' theory."   *Slater v.*
19               *Blackwood*, 15 Cal. 3d 791, 795 (1975).  Under this theory, "[a] cause
                 of action . . . arises out of an antecedent primary right and
20               corresponding duty and the delict or breach of such primary right and
                 duty by the person on whom the duty rests.  'Of these elements, the
21               primary right and duty and the delict or wrong combined constitute
                 the cause of action in the legal sense of the term . . . .'" *McKee v.*
22               *Dodd*, 152 Cal. 637, 641 (1908).

23               "In California the phrase 'causes of action' is often used
                 indiscriminately . . . to mean *counts* which state [according to
24               different legal theories] the same cause of action . . . ." *Eichler*
                 *Homes of San Mateo, Inc. v. Superior Court*, 55 Cal. 2d 845, 847
25               (1961).  But for purposes of applying the doctrine of res judicata, the

---

[3] Notably, the 1986 Release released all "causes of action" against Western MacArthur and its
predecessor, Western Asbestos.  That alone ends the inquiry.

United States District Court
Northern District of California

phrase "cause of action" has a more precise meaning: The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced.  As we explained in *Slater v. Blackwood*, supra, 15 Cal.3d at page 795: "[T]he 'cause of action' is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. 'Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different legal ground for relief.'"

Appellants argue that the 1986 Dismissal is ineffective against Western Asbestos because it was not a named party in the lawsuit.  Appellants' Opening Br. at 46–47.  This Court disagrees. The Release resolved Mr. Darden's product liability claim.  The "primary right" underlying that liability was Mr. Darden's right not to be exposed to asbestos-containing products that Western Asbestos sold and/or installed.  The product liability and negligence causes of action each arise from this right.  Under *Boeken*, (1) Mr. Darden sought to avoid exposure to dangerous, asbestos-containing products, (2) Western Asbestos had a duty not to market and/or install dangerous asbestos-containing products, and (3) Western Asbestos breached that duty.  Western MacArthur was equally liable for the breach of this primary right.  The resolution of Mr. Darden's claim against Western MacArthur resolved this primary right, and thus the Release bars a direct claim against Western Asbestos.  *See Richard B. LeVine, Inc. v. Higashi*, 131 Cal. App. 4th 566, 576–77 (2005) (collecting cases) ("Thus if the corporation was absolved of its derivative liability, the agents were likewise necessarily absolved.").

Finally, the Court agrees that Western Asbestos was in privity with Western MacArthur. "[P]rivity requires the sharing of an identity or community of interest with adequate representation of that interest in the first suit, and circumstances such that the nonparty should reasonably have expected to be bound by the first suit."  *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 826 (2015).  "The emphasis is not on a concept of identity, but on the practical situation.  The question is whether the non-party is sufficiently close to the original case to afford application of the principle of preclusion."  *Alvarez v. May Dept. Stores Co.*, 143 Cal. App. 4th 1223, 1236–37 (2006) (citations omitted).  The history of Western Asbestos is important.  Western MacArthur

1   was formed to take over Western Asbestos's business.  Thus, Western Asbestos should have been

2   named in the 1983 Action, and there cannot be any doubt that there was privity between the two

3   companies.  Accordingly, the Court thus agrees with the Bankruptcy Court that the 1983 Action

4   precludes the personal injury claim at hand.

5                          **C.  Appellants' Wrongful Death Claim**

6               Appellants next argue that the Bankruptcy Court correctly held that the 1986 Release did

7   not affect their wrongful death claims, but incorrectly concluded that the Western Asbestos

8   Settlement Trust documents do not permit recovery on the claims.  The Court disagrees.

9               The Bankruptcy Court carefully reviewed the Joint Plan and the Trust Documents and

10  concluded that Appellants could not recover under the Trust on their wrongful death claims.  The

11  Court adopts the Bankruptcy Court's review and understanding of the Joint Plan and the Trust

12  Documents.  The Court agrees that the Joint Plan and Trust Documents harbor no ambiguity

13  regarding whether the Trust must compensate Appellants for their wrongful death claims.

14  Appellants do not themselves allege that they were exposed (directly or indirectly) to asbestos

15  products.  Instead, they wish to assert wrongful death claims that entitle them to damages for the

16  pecuniary loss resulting from Mr. Darden's death.  *See* Cal. Code Civ. Pro. § 377.61.  Without

17  some underlying claim of asbestos exposure and illness, the Trust cannot compensate Appellants.

18  While this Court appreciates Appellants' argument that the Trust is meant to compensate all

19  asbestos related claims, this misreads the Joint Plan and the Trust Documents, misunderstands the

20  purpose of the creation of the Trust, and ignores the fact that the Trust has never paid a wrongful

21  death claim.  For these reasons, the Court agrees with the Bankruptcy Court that the Trust is not

22  required to compensate Appellants' wrongful death claims.

23                          **D.  Motion to Strike**

24              Appellees move to strike portions of Appellants' reply brief, arguing that Appellants raised

25  new arguments for the first time in their reply brief.  *See* Appellees' Motion to Strike Portions of

26  Appellants' Response and Reply Brief ("Mot."), Dkt. No. 16.  Appellants oppose this motion.  *See*

27

28  Case No.: 5:21-cv-06558-EJD
    ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT'S ORDERS; GRANTING
    APPELLEES' MOTION TO STRIKE
                                        18

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Appellants' Opposition to Appellees' Motion to Strike ("Opp."), Dkt. No. 19.

2          In the Ninth Circuit, a "district court need not consider arguments raised for the first time

3   in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).  Arguments "not raised by

4   a party in its opening brief are deemed waived." *Sophanthavong v. Palmateer*, 378 F.3d 859, 872

5   (9th Cir. 2004) (citation omitted).  There are three exceptions to the waiver rule: (1) good cause or

6   manifest injustice; (2) issue raised in appellee's opposition brief; and (3) lack of prejudice.

7   *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003).

8          Appellants make four new arguments in their reply brief:

9   
10  • Appellants argue for the first time that the Bankruptcy Court usurped the Trust's obligation
       to value/liquidate their wrongful death claims and valued them at "zero."  Specifically,
11     Appellants argue that the "Bankruptcy Court exceeded its authority by valuing/liquidating
       the heirs wrongful death claim, since valuation is determined pursuant to the matrix and by
12     arbitration, if necessary."  There is no mention of valuation or liquidation of Appellants'
       wrongful death claims in Appellants' opening brief.  The opening brief only discusses
13     whether the Trust documents allow payment of wrongful death claims, it says nothing
       about whether the Trust documents permit a Bankruptcy Court to value claims.

14  
15  • Appellants argue for the first time in their reply brief that the primary right theory detailed
       in *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788 (2010) does not apply to asbestos
16     cases and that there are separate primary rights for different asbestos-related diseases such
       that claim preclusion does not apply.  In their opening brief, Appellants argued that *Boeken*
17     and other cases cited by Appellees prohibited "a second suit between the same parties on
       the same cause of action litigated in the prior proceeding that resulted in a judgment on the
18     merits."  Appellants' Opening Br. at 46–47.  Appellants argued that because the 1983
       Action and this Action do not involve the same parties, this Action is not precluded.  There
19     was no argument regarding the applicability of the primary rights theory to asbestos cases.

20  
21  • Appellants argue for the first time in their reply brief that all laws are incorporated into the
       Release.  There is no reference to incorporation in their opening brief.

22  
23  • Appellants argue for the first time in their reply brief that California recognizes an
       objective theory of contracts.  Specifically, Appellants argue that California recognizes the
24     objective theory of contracts, under which it is the objective intent, as evidenced by the
       words of the contract, rather than the subjective intent of the parties, that controls
25     interpretation.  There is no mention of the objective theory of contracts in Appellants'
       opening brief.

26  
27
28  ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT'S ORDERS; GRANTING
    APPELLEES' MOTION TO STRIKE
                                          19

1    The Court will not consider these new arguments.  The unfairness of presenting these

2    arguments for the first time in a reply brief is obvious.  Appellees have been denied the

3    opportunity to demonstrate that these four new theories lack legal or factual support.  It is no

4    answer that Appellees can request leave to file a sur-reply.  *See* Opp. at 8.  Moreover, none of

5    these theories rely on newly discovered facts; each was known or should have been known at the

6    time of the initial bankruptcy action.  Because Appellants raised these four theories for the first

7    time in their reply brief, this Court declines to reach them.

8    **IV.    CONCLUSION**

9    For the foregoing reasons, this Court **AFFIRMS** the Bankruptcy Court's holdings that the

10   1986 Release includes Western Asbestos, that the 1983 Action precludes Appellants' personal

11   injury claim, and that the Trust cannot compensate Appellants for their wrongful death claims.

12   The Court **GRANTS** Appellees' motion to strike portions of Appellants' reply brief.  The Clerk

13   shall close the file.

14   **IT IS SO ORDERED.**

15   Dated: September 21, 2022

16

17   _____

18   EDWARD J. DAVILA
     United States District Judge

19

20

21

22

23

24

25

26

27

28

Case No.: 5:21-cv-06558-EJD
ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT'S ORDERS; GRANTING
APPELLEES' MOTION TO STRIKE

United States District Court
Northern District of California